UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| INGRID LEWIS, Individually and on behalf of DESMOND LEWIS, Deceased,<br>    *Plaintiff,* | §<br>§<br>§<br>§<br>§ | |
| VS. | §<br>§<br>§ | CIVIL ACTION NO. _____ |
| DEMETRIUS HORTON, individiually and in his official capacity as a Police Officer of the City of Shreveport Police Department, AMERICAN ALTERNATIVE INSURANCE CORPORATION and the CITY OF SHREVEPORT,<br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Ingrid Lewis ("Ingrid"), individually as the biological mother of Desmond Lewis, and on behalf of Desmond Lewis, Deceased, complaining of Defendants, Demetrius Horton ("Horton"), individually and in his official capacity as a Shreveport Police Officer, American Alternative Insurance Corporation ("American Alternative") and the city of Shreveport, Louisiana (the "City") and for cause would show the Honorable Court as follows:

### I.    NATURE OF THE ACTION

1.    This is an action brought by the Plaintiff against Shreveport Police Officer Horton in his individual and official capacity for his use of excessive and deadly force resulting in the death of Desmond Lewis ("Lewis") under the color of law in violation of his individual right under the Fourth Amendment of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C. § 1983.  Furthermore, Plaintiff Ingrid Lewis is entitled to recover damages arising from the decedent's wrongful death as applied under Louisiana Civil Code Article 2315 et

seq and 42 U.S.C § 1983 and all other applicable laws complaining of the various acts listed below and for her wrongful death cause of action.

2.      Plaintiff alleges that the City and its policy makers, Interim Chief of Police, Wayne Smith ("Smith"), the Shreveport City Council, and Mayor of Shreveport, Adrian Perkins ("Perkins") (collectively referred herein as the "Policymakers") implemented a use of force policy that is facially unconstitutional and failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force, including those officers repeatedly accused of such acts.  The Policymakers, specifically Interim Chief of Police Smith had a duty, but failed to implement and/or enforce policies, practices, and procedures for the SPD that respected Lewis's constitutional rights. Defendant City and its Policymakers', specifically Interim Chief of Police Smith, failure to implement the necessary policies and the implementation of facially unconstitutional policies deprived Lewis of his rights under the Constitution and caused him unwarranted and excruciating physical and mental anguish and eventually Lewis's death.  Defendant Horton consciously disregarded the rights of Lewis, knowing that the Policymakers would ratify and/or approve of his actions. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks answers and compensation for her damages and the wrongful death of Lewis.

## II.    PARTIES

3.      Plaintiff, Ingrid Lewis is a citizen of the United States and a resident of Shreveport, Louisiana.  Ingrid Lewis is the surviving mother and heir of the deceased, Desmond Lewis.  Lewis did not have any children.  Plaintiff Ingrid Lewis as the heir of Lewis has standing to bring this action as applied Louisiana Civil Code Article 2315 et seq and 42 U.S.C § 1983 and all other applicable laws complaining of the various acts listed below.

4.      Defendant Demetrius Horton, upon information and belief, is a resident of Shreveport, Louisiana, and at all times material herein was a police officer for the city of Shreveport Police Department ("SPD").  Horton is a person of suitable age and capacity and is an adult resident of the Western District of Louisiana. Horton may be served with process at his personal residence in Louisiana or wherever he may be found.

5.      Defendant American Alternative Insurance Corporation (hereinafter referred to as "American Alternative"), a foreign insurer authorized to do and doing business in the State of Louisiana, which may be served through the Louisiana Secretary of State;

6.      Defendant City is a municipality located in Shreveport, Louisiana.  The City funds and operates the SPD. Interim Chief of Police Smith and Mayor Perkins were responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The SPD is also responsible for preventive, investigative, enforcement services and assuring safety for all citizens of the City of Shreveport. The City may be served through Mayor Adrian Perkins, 505 Travis Street, Suite 200, Shreveport, Louisiana 71101 or wherever he may be found.

### III.      JURISDICTION AND VENUE

7.      Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent Lewis, by constitutional and statutory provisions

8.      Venue is proper in this court because the causes of action occurred within the Western District of Louisiana, Shreveport Division.

### IV.      FACTS

A.      **Demetrius Horton shoots and kills Desmond Lewis.**

9.      On September 11, 2021, Lewis was at his mother's residence when he decided to go to a Circle K store to purchase some items. According to Mrs. Ingrid, Lewis had in his possession, two cellular phones, and did not have any weapons on his person.  In fact, Lewis was not known to own any guns. While at the Circle K store, at no time did Lewis create any disturbance nor did he harass anyone. No one from the Circle K store reported that Lewis was in possession of a gun or that Lewis was threatening to harm anyone.

10.     For some unknown reason, Defendant Horton arrived at the Circle K store shortly before Lewis left. Lewis was not committing any penal offenses when Defendant Horton approached him. Upon information and belief, Defendant Horton harassed Lewis for no lawful reason.  Not wanting any trouble, Lewis decided to immediately leave. For some unknown reason, Defendant Horton started to pursue Lewis.  According to witnesses, Lewis appeared to be running away from Defendant Horton as if he were scared.  After a very short pursuit, Defendant Horton tackled Lewis to the ground and was observed placing Lewis's arms behind his back.  According to witnesses, Defendant Horton was straddled on top of Lewis who was faced down and unable to get up when Defendant Horton fired multiple shots at Lewis at close range, hitting Lewis in the back of his head and his left forearm.  According to witnesses, who indicated they had a clear view of the incident, Lewis was not in possession of handgun nor did he make any gestures that would make it appear that he had a gun, when Defendant Horton shot Lewis execution style in the back of the head.

11.     Defendant Horton's wrongful action resulted in Lewis's painful death after suffering for a period of time without any medical attention from Defendant Horton or any other Shreveport police officers who arrived on the scene.

**B.**     **Horton's used excessive force in violation of the Plaintiff's clearly established constitutional rights.**

12.     On the day Defendant Horton killed Lewis, the decedent was NOT committing any violent offense and in fact, Lewis posed no threat of harm to Defendant Horton or to anyone for that matter. Defendant Horton shot an unarmed Lewis, at close range, in the back of the head without showing any remorse.

**C.**     **Other Officer Involved Shootings.**

13.     The number of officer involved shootings in Shreveport as represented by multiple reports show a large number of excessive force cases in a four-year period. Experts say Shreveport's police department has all the trademarks of a troubled agency in need of outside intervention.

14.     According to a news report, between 2019 and 2020, five incidents of alleged beatings and tasings by the department—including one that killed a man—resulted in charges for sixteen officers in the SPD. According to community leaders and residents, as well as a review of lawsuits filed against local police, the department has been slow to release any information at all about deaths in custody and excessive use of force—particularly against members of the Black community. When it has, details have been scant.

15.     One afternoon in February 2019, Anthony Childs was walking down the street in Shreveport, Louisiana, when he was spotted by Shreveport Police officer Treveion Brooks ("Brooks"). Dashcam video from that day, first obtained by the ***Shreveport Times***, shows Brooks make a U-turn and drive up to Childs, who ran into an open field. It was reported that Brooks was attempting to stop Childs, a 31-year-old Black man, because his shorts were sagging below his waistline, breaking a city ordinance that has since been repealed.

16.     In the video, Brooks hops the curb and speeds toward Childs, nearly hitting him. Brooks got out of his patrol vehicle and took cover behind his car's trunk. It was alleged that Brooks believed Childs to be armed so he fired two shots. After a brief pause, three more shots were fired. More than 10 seconds pass, a period during which Brooks calls in the shooting. Then he says, "Hey, show me your hands," and four more shots are fired.

17.     Childs died as a result of the incident. Of the nine shots fired, at least eight came from Brooks' gun, hitting Childs three times.

18.     Beyond allegations of vicious attacks on people of color, some of them already in custody, critics in Shreveport often emphasize the shroud of mystery under which investigations are handled, and in some cases seemingly kept quiet.

19.     One of the more high-profile examples: the death of 44-year-old Black man Tommie McGlothen Jr. in April 2020.  The police were called about McGlothen three times before he died. The first time, McGlothen's family called the Shreveport Police themselves to report another "episode." (In the past, he said, the family had sought help from police officers for McGlothen, who suffered from paranoid schizophrenia and depression.) The second time, McGlothen had gone missing from his home. The final time was after McGlothen allegedly got into an altercation with another man, according to a report in *The Shreveport Times*.

20.     After police arrived and arrested him, McGlothen was transferred to a local hospital and died early in the morning on April 6, 2020. It was not until cellphone footage was released two months later that it was revealed McGlothen was punched in the head and face, kicked, tased, and struck with a baton by four officers during a struggle on the ground and while getting into a patrol car.  Little was initially revealed by the SPD to the family about the circumstances of McGlothen's death.  After reviewing the files, prosecutors said, there were "missing reports,

statements, downloads, and other vital information that is essential to conduct a thorough and complete review," and they asked for anyone with video evidence to come forward.

21.     The alleged blackout of information was no one-off thing, Councilwoman LeVette Fuller ("Fuller") said. Fuller pointed to a separate beating of two Black men by police in January 2020 that was only revealed to the public five months later.

22.     In another incident, according to the District Attorney's Office, Shreveport Police officers tried to stop Chico Bell, 40, and Damon Robinson, 44, for seatbelt violations as they left a home in a car. After hitting their light and sirens, Bell and Robinson allegedly continued to drive, and a pursuit began. Eventually, a Caddo Parish Sheriff deputy joined the pursuit.  When the car with Bell and Robinson came to a stop, the deputies' dashcam shows Bell and Robinson raised their hands and stuck them out the window, according to prosecutors. But Shreveport Police officers pulled Bell out of the car through the window, and punched, kicked and tased him, according to reports. Medical records show Bell suffered a broken orbital plate. Prosecutors concluded that the same footage caught another Shreveport officer punching Robinson multiple times through the car window while other officers held his hands. Robinson was taken to the ground and hit in the face with a flashlight while his hands were behind his back, shattering his nose.

23.     In July 2020, Fuller, a city council member in Shreveport, submitted a formal request for a patterns or practice investigation to the Department of Justice after the City Council unanimously approved a resolution to do so. These investigations of police departments are meant to address widespread issues and push departments to change policies, training, hiring, internal affairs procedures, and the way they collect and report data. Fuller hoped the documented cases of excessive use of force by the police department, as well as other evidence of them withholding information about those events in many instances, would be enough to get the DOJ's attention for

such an investigation in Shreveport.  The City was clearly aware that were problems within the SPD.

24.     As indicated above, Defendant Horton shot Lewis in the back of the head and in the left forearm for no lawful reason.  Even though Lewis did not have a weapon in his hands or on his person; Defendant Horton shot first and asked questions later, which is the custom, practice, and the unconstitutional policy of the SPD.

25.     Lewis posed no threat of immediate death or great bodily harm to Defendant Horton or any other person in the immediate area. Lewis was on his stomach when Defendant Horton shot him behind the head.  There is no evidence that Defendant Horton or others reasonably feared for their lives when Defendant Horton fired the deadly shots.

26.     At the time Defendant Horton drew his gun, Lewis did not resist in any way that would justify Defendant Horton's use of deadly force. The drawing of an officer's weapon inherently assumes that the use of force will cause death or serious bodily injury to the suspect and is to be applied under very narrowly defined circumstances. An officer should not use deadly force if there is a risk of killing an innocent party.

27.     As a result of Defendant Horton's deadly and unlawful attack, Lewis sustained multiple injuries, resulting in his death.

**D.     The Plaintiff's injuries and damages are attributable to unconstitutional written and unwritten SPD policies on the use of force.**

1.   **The City of Shreveport's unwritten policies caused the violation of Lewis's Fourth Amendment rights.**

28.     The SPD continually failed to train its officers adequately in the constitutional use of force, specifically firing at an unarmed Black man, despite knowing of the need to do so. Even if the SPD trained its officers in accordance with its own written policies on the use of force, such

training was necessarily inadequate to instruct officers in the constitutional limits on force, because the policies themselves promote unconstitutional uses of non-deadly and deadly force. By training its officers—including Horton—to follow unconstitutional written use-of-force policies, the City of Shreveport failed to train Horton regarding deadly and non-deadly force in a manner that is consistent with what the Constitution permits. Horton's lack of training in the constitutional limits of the use of force caused him to use deadly force against Lewis when he posed no immediate threat of harm to officers or anyone else. In sum, the City's written, and unwritten policies and training failures caused Defendant Horton to use excessive deadly force that was unjustified by the circumstances, in violation of the Fourth Amendment rights of Lewis —a moving force behind the constitutional injuries Lewis suffered.

29.    The SPD did not provide adequate training to Defendant Horton in the use of deadly force and the use of non-deadly force.

30.    The SPD did not provide adequate training to Defendant Horton on proper arrest, confrontation techniques and de-escalation of force.

31.    The defendants knew or should have known that the training was inadequate or nonexistent.  The City ratified the acts of Defendant Horton and have continued to cover-up for him.  Despite the unlawful acts of Defendant Horton, he remains a Shreveport police officer.

32.    As confirmed by witnesses, Lewis posed no threat of imminent danger of death or great bodily harm to Defendant Horton or any other person in the immediate area.

33.    Defendant Horton's unlawful and unwarranted acts, lack of training and the official customs or policies of the SPD caused Lewis's wrongful death.

34.    Plaintiff would also show that at all times material hereto, Defendant Horton was acting under the color of law when he shot and killed Lewis.

35.     Plaintiffs would further show that Defendant Horton's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures of the SPD in regard to the use of deadly force for which the City and the Policymakers, specifically, Interim Chief Smith knew or should have known but never provided the requisite and proper training.

36.     Defendant Horton had no probable cause or reasonable suspicion to believe that Lewis was or attempting to commit a crime. In fact, when Defendant Horton approached Lewis, he was about to leave the Circle K store.  On information made available to the Plaintiff by a number of witnesses, Lewis did not have a gun in his hand nor was he attempting to cause bodily harm to Defendant Horton or anyone else.  Defendant Horton fatally shot Lewis for no lawful reason.

37.     Defendant City and the SPD have a longstanding record of not providing SPD officers with adequate training, not preventing excessive force and extrajudicial killings by Shreveport Police officers.  The City Council and Mayor Perkins had in fact delegated policy-making authority to Interim Chief Smith, giving him the responsibility for setting training policies and knew that there were training issues which resulted in the killing of Lewis.  As a result of the lack of training and the official custom or policies of the SPD, Shreveport remains at the top of the list in the state of Louisiana for police misconduct.  Defendant Horton's inadequate training resulted in the death of Lewis.  Despite the number of internal affairs complaints lodged against police officers for misconduct, the SPD continues to cover up for the bad acts of its officers.

38.     The internal affairs section of the SPD has received hundreds of complaints involving the use of excessive force by police officers rarely taking any disciplinary action against the officers.  This has resulted in a failure to supervise, discipline, counsel, or otherwise control

police officers who are known or should be known to engage in the use of excessive force.  The police officers know at the time they act that their use of excessive and deadly force in conscious disregard of the rights and safety of innocent third parties will meet with the approval of City Policymakers.  Defendant Horton is a part of "a police code of silence wherein other officers and supervisors habitually cover[ed] up use of excessive force by fabricating accounts to the media and in official reports and internal affairs investigations.  This is exactly what has happened with the shooting death of Lewis.

39.     The City Council are aware that the SPD has a real problem but nothing has been done.  The Department's lack of supervision and accountability transparency with the complaint process remains a major concern.

40.     The problems in the SPD's Internal Affairs in particular run more than policy deep.  Internal Affairs' gut reaction to most complaints is to protect fellow officers and to disbelieve and attack the credibility of complainants.  Individuals in Shreveport are afraid to report the bad acts of police officers out of the fear of being retaliated against.

41.     The SPD did not provide adequate training to Defendant Horton in the use of deadly force and the use of nondeadly force.  The SPD did not provide adequate training to Defendant Horton on proper arrest and confrontation techniques.

42.     The SPD did not provide adequate training to Defendant Horton on appropriate methods and techniques to control situations similar to the one created by Horton on September 11, 2021. The City and SPD knew or should have known that the training was inadequate or nonexistent.

43.     As made clear by witnesses to the incident, Lewis posed no threat of imminent death or great bodily harm to Defendant Horton or any other person in the immediate area while

attempting to leave the Circle K store, which is not a crime.

44.     Plaintiff would show that at all times material hereto, Defendant Horton was acting under the color of law as agent, servant, and employee of Defendant City within its executive branch and was performing a governmental function.

45.     Plaintiff would further show that Defendant Horton's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures of the SPD in regards to the use of deadly force for which the City and the Policymakers, specifically, the City Council, Mayor Perkins and Interim Chief Smith knew or should have known but never provided the requisite and proper training.

46.     Moreover, no reasonably competent official would have concluded that the actions of Defendant Horton described herein would not violate Lewis's constitutional rights.  In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendant Horton's conduct was justified nor was the treatment of Lewis, reasonable.

47.     Rather than implement policies and procedures to curtail death and/or injuries that result from the improper use of deadly force, the SPD's written policies on the use of force promote the unconstitutional use of deadly force. Moreover, the SPD has not disciplined officers like Horton for using unconstitutional degrees of force.

48.     As a direct and proximate result of the Defendants' conduct, Plaintiff has sustained substantial damages and pecuniary loss.

49.     Lewis was thirty (30) years old when he was killed by Defendant Horton.  He was in good health, with a reasonable life expectancy of living at least 54 more years to age 84.

50.     Upon information and belief, the SPD has not implemented policies and procedures to aggressively curtail deadly shooting cases that has been a major problem.  Defendant Horton has not been terminated despite his wrongful acts.

## V.     CAUSES OF ACTION

**A.     Cause of Action against Demetrius Horton under 42 U.S.C. §1983 for Violation of Lewis's Fourth Amended Right to be free from excessive force.**

51.     Plaintiff incorporates by reference paragraphs 1 through 50 as if fully set forth herein. Plaintiff would show that the force used by Defendant Horton was excessive, violated Lewis's clearly established constitutional rights, and was not objectively reasonable under the circumstances.

52.     Plaintiff would show that Lewis was killed as a direct result of Defendant Horton's use of force that was clearly excessive and the excessiveness of which was clearly unreasonable. That is, Defendant Horton, without justification and the need to do so, used excessive and deadly force as described above and killed an unarmed Lewis without legal justification. Defendant Horton's use of force was clearly excessive and clearly unreasonable because Lewis never made any threatening gestures toward Defendant Horton and did not pose an immediate threat to the safety of Defendant Horton or others.

53.     Defendant Horton was not provoked when he fired multiple close-range shots at Lewis for no lawful or justifiable reason. At no times did Lewis point any weapons at Defendant Horton.  Lewis died as a result of the gunshot wounds to his head.  The excessive and deadly force used by Defendant Horton was not reasonable or justified, nor was it necessary under the circumstances.

54.     Defendant Horton's actions were not objectively reasonable because Lewis did not pose an immediate risk of serious physical harm to any officers or any other person.

55.     The force used by Defendant Horton was objectively unnecessary, excessive, and unreasonable under the circumstances, as Lewis did not pose an immediate threat to  the  safety of  Defendant Horton or  others and the use of such excessive and deadly force was unnecessary. Rather, Defendant Horton embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause and, in fact, caused Lewis to suffer extreme and severe mental and emotional distress, agony and anxiety.

56.     Defendant Horton embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause and, in fact, caused Lewis to suffer extreme and severe mental and emotional distress, agony and anxiety.

57.     Further, Defendant Horton's conduct violated a clearly established constitutional right—the right to be free from excessive force—that was established well before Defendant Horton shot and killed Lewis.  *See, e.g., Reyes v. Bridgewater,* 362 Fed. Appx. 403, 409 (5th Cir. 2009) ("The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others."). More specifically, the right to be free from the use of excessive force was clearly established under the particular circumstances presented to Horton.  *See Lytle v. Bexar Cty., Tex.,* 560 F.3d 404, 417–18 (5th Cir. 2009) ("It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others.").

58.     As a result of these Constitutional violations to Lewis, Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

**B.      Cause of Actions against the City under 42 U.S.C. § 1983 for violation of the Plaintiffs' Fourth Amendment Rights.**

59.      The City of Shreveport is liable for all damages suffered by the Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) and 42 U.S.C. § 1983, based on an official policy or custom of the Shreveport Police Department of which the City Council, the City Manager, the Mayor, and Chief of Police all had actual or constructive knowledge that was a moving force behind the constitutional violations alleged herein.

**1.      The City's written policies on the use of force are facially unconstitutional and were a moving force behind violating Lewis's constitutional right to be free from excessive force.**

60.      Plaintiff incorporates paragraphs 1 through 59 as if fully set forth herein.  Prior to the incident, the City and its Policymakers, specifically the City Council and Interim Chief of Police Smith knew of the excessive use of force being used by Shreveport police officers but did nothing to curtail it.

61.      The SPD's policies on the use of force instruct officers that the degree of non-deadly force is objectively reasonable even when based on the officers' subjective evaluation and that officers may even use deadly force when no immediate threat of harm actually exists. Because both policies directly contradict what the United States Supreme Court has determined are the constitutional limits of the use of force, the policies on the use of force are facially unconstitutional.

62.      Deadly force is not justified "[w]here the suspect *poses no immediate threat* to the officer and no threat to others." *Cole*, 935 F.3d at 453 (emphasis added) (quoting *Garner*, 471 U.S. at 11). The United States Supreme Court has not interpreted the constitution to justify using deadly force when the officer simply believes that a threat exists, even if the belief is reasonable. Thus, unless the suspect <u>actually poses</u> an <u>immediate</u> threat, the officer's <u>belief</u> that a suspect posed a threat alone does not justify using deadly force. A policy that instructs officers that they may use

deadly force when they reasonably believe a threat exists, regardless of whether the threat actually exists and regardless of whether the threat is immediate, violates the constitutional limits on the use of force.

63.     Furthermore, the United States Supreme Court has concluded that the objective "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene"—not based on the particular officer's subjective evaluations. *Graham*, 490 U.S. at 396. Thus, in determining what degree of force is appropriate, officers may not consider subjective criteria, such as their own age, size, strength, skill level with department weapons, or state of health. A policy that defines "objective reasonableness" to include such subjective criteria, therefore, violates the constitutional limits on the use of force.

64.     Policies that ignore the United States Supreme Court's interpretation of the Constitution are facially unconstitutional. *See Monell*, 436 U.S. 658. The SPD's policies on the use of force instruct officers that the degree of non-deadly force is objectively reasonable even when based on the officers' subjective evaluation and that officers may even use deadly force when no immediate threat of harm actually exists. Because both policies directly contradict what the United States Supreme Court has determined are the constitutional limits of the use of force, the policies on the use of force are facially unconstitutional.

65.     Defendant Horton acted on the City's facially unconstitutional polices on the use of force when he used excessive deadly force against Lewis, causing Lewis's death. Defendant Horton was unjustified in using deadly force against Lewis because Lewis did not pose any actual, immediate threat to officers or others. Shooting an unarmed man in the back of the head at close range on nothing more than Defendant Horton's subjective perception of danger—as the SPD's use of force policies unconstitutionally instruct officers they may—was objectively unreasonable

and violated the Fourth Amendment rights of Lewis. Therefore, the SPD's use-of-force policies were moving forces behind Plaintiff's' constitutional injuries.

**2.      The City failed to train its officers on use of force and in dealing with individuals during a foot pursuit.**

66.     Plaintiff incorporates by reference paragraphs 1 through 65 as if fully set forth herein.  Prior to September 11, 2021, the Policymakers knew or should have known that Defendant Horton exhibited a pattern of escalating encounters with the public.

67.     Defendant Horton was acting under the color of law and acting pursuant to customs, practices and policies of the CITY OF SHREVEPORT and the SPD in regards to the use of deadly force as authorized and/or ratified by the Policymakers When he deprived Lewis of rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States, by the city of Shreveport failing to provide proper training in the use of deadly in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

68.     With respect to the claims made the basis of this lawsuit, the City and the SPD failed to adequately train, supervise or discipline its employees regarding the unnecessary use of deadly force. The failure to train, supervise or discipline its employees in a relevant respect reflects a deliberate indifference to the City, SPD, the City Council, Mayor Perkins and Interim Chief Smith to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

69.     Defendant City, SPD, and Interim Chief Smith under the direction of the City Council and Mayor Perkins developed and maintained a policy of deficient training of its police force in the use of force, including the use of deadly force in the apprehension and the wrongful

detention of individuals.  The City's training is designed and implemented by Interim Chief Smith to act in this regard.

70.     The City's failure to provide adequate training to its police officers regarding the use of deadly force and wrongful arrest/detentions reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of Lewis's constitutional rights, including Lewis's death, a reasonable probability.

71.     Plaintiff would show that Defendant Horton's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which the City and the Policymakers knew or should have known but never provided the requisite and proper training.

72.     On information and belief, Defendant City, SPD, the City Council, Mayor Perkins and Interim Chief Smith, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Lewis, failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Lewis during his struggle to survive and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Lewis from receiving the protection, assistance and care he deserved.

73.     For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Lewis's constitutional rights:

(a) The inadequacy of SPD'S policies, training, supervision, or discipline relating to the use of deadly force during a foot pursuit;

(b) The inadequacy of SPD's policies, training, supervision, or discipline relating to the use of non-lethal control devices and tactics;

(c) The adoption of completely subjective continuum of force policy that can be expressly avoided, and which leaves the use of deadly force exclusively to the unchecked discretion of officers on the scene;

(d) The adoption of a policy that allows officers to use the degree of force that the officer feels brings the situation quickly under control as per his or her individual judgment even if that method is deadly force;

(e) Lack of training regarding effective communication with citizens while giving them commands and determining their compliance.

(f) Using excessive and/or deadly force against Lewis although he caused no immediate threat;

(g) Using excessive and/or deadly force against Lewis while he was in a surrender position; and

74.    In addition, Defendant City, as applicable, failed and refused to implement customs, policies, practices, or procedures, and failed to train its personnel adequately on the appropriate policies, practices, or procedures regarding the use of deadly force, foot pursuits and the wrongful detention of individuals. In so doing, Defendant City knew that it was acting against the clear dictates of current law and knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Lewis's death -- in all reasonable probability would occur.

75.    The City's failure to properly train, supervise and discipline its police officers regarding the use of force was the proximate cause of the violations of Lewis's constitutional rights including the unnecessary taking of Lewis's life.

**3.    The City failed to adequately supervise or discipline its officers for violent, aggressive, excessive force and wrongful arrest and detention and, in failing to do so, ratified and encouraged the conduct of its officers, including Defendant Horton.**

76.    Plaintiff incorporates by reference paragraphs 1 through 75 as if fully set forth herein.

77.    On Plaintiff's governmental liability claim against the City for failing to supervise and/or discipline its officers for prior violations and the resulting lack of supervision:

a.    the City and Interim Chief Smith failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal;

b.    Interim Chief Smith was deliberately indifferent to the need to supervise and/or discipline its officers and/or employees adequately;

c.    the failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Lewis's constitutional rights; and

d.    the City and Interim Chief Smith failed to adequately supervise and/or discipline Defendant Horton for shooting an unarmed Lewis in the back of the head for no lawful reason, resulting in the death of Lewis.

78.    Despite having knowledge of Defendant Horton's violation of the SPD's policies and other best police practice as described above, the City, the City Council and Interim Chief Smith refused to adequately discipline Defendant Horton. The City's Policymakers were aware of the out-of-control behavior of Defendant Horton but failed to take any actions.  The City's failure to adequately supervise and/or discipline its officers was therefore the moving force behind Plaintiff's damages.

**C.    Direct Action Pursuant to Louisiana Revised Statute § 22:1269 against American Alternative Insurance Corporation.**

79.    Plaintiff incorporates by reference paragraphs 1 through 78 as if fully set forth herein.

80.    Upon information and belief, Defendant American Alternative provides both liability and excess coverage to the City for the damages asserted and sustained herein.

81.    Defendant American   Alternative, upon information and   belief, has   issued or currently has in effect, one or more policies of insurance covering one or more of the Defendants named herein. For valuable consideration received, these policies obligated Defendant, jointly and/or severally, to pay on behalf of its insured Defendant(s) any sums the insured Defendant(s)

may become obligated to pay to Plaintiff or to indemnify its insured Defendant(s) for any sums the insured Defendant(s) may become obligated to pay to Plaintiff under the terms of its policies.

82.     Upon information and belief, Defendant American Alternative is liable to Plaintiff for any and all damages incurred by reason of the insured Defendant(s)' acts, up to its policy limits, notwithstanding the fact that the insured Defendant(s) may themselves be able to assert claims of privilege or immunity from liability.

83.     Under Louisiana Revised Statute §22:1269, Plaintiff brings a  direct action against Defendant American Alternative to recover any and all sums they are obligated to pay Plaintiff on behalf of its insureds or to indemnify its insureds.

**D.      Wrongful Death pursuant to Louisiana Civil Code Article 2315 et seq.**

84.     Plaintiff incorporates by reference paragraphs 1 through 83 as if fully set forth herein.

85.     The wrongful actions of Defendant Horton on September 11, 2021, caused the wrongful death of Lewis.

86.     Defendant Horton's use of excessive and deadly force caused Lewis's death.

87.     The actions of Defendant Horton described herein were the direct and proximate cause of the injuries, including his death, to Lewis.

88.     The actions of Defendant Horton described herein violated Lewis's federal and state constitutional and statutory rights as specified herein and resulted in his death.

89.     The actions of Defendants described herein were the direct and proximate cause of the injuries, including his death, to Lewis.

90.     Plaintiff hereby asserts a claim under Louisiana Civil Code Article 2315 et seq. for the wrongful death, loss of consortium, and survival action of Lewis.

91.     Further, Plaintiffs Ingrid Lewis, the surviving mother of Desmond Lewis at the time of his untimely and premature death, asserts her claims for wrongful death, loss of consortium, and survival damages under Louisiana Civil Code Article 2315 et seq.

## VI.     DAMAGES

92.     **Actual damages.**  Plaintiff incorporates by reference paragraphs 1 through 91 as if fully set forth herein.  Defendants' acts and/or omissions were a proximate cause and the moving force behind the following actual damages suffered by the Plaintiff and Defendants should be held jointly and severally liable for the following damages.   Plaintiffs hereby assert a claim under Louisiana Civil Code Article 2315 et seq. for the wrongful death, loss of consortium, and survival action of Desmond Lewis:

a.     **Desmond Lewis.**
1.     Conscious pain and mental anguish suffered by Desmond Lewis prior to his death; and
2.     Funeral and burial expenses.
3.     Loss of value of life.
4.     Exemplary Damages.

b.     **Ingrid Lewis, and the statutory beneficiaries (as wrongful death beneficiaries of Desmond Lewis).**
1.     Mental anguish—the emotional pain, torment, and suffering experienced by Ingrid Lewis and the statutory beneficiaries because of the death of Desmond Lewis—that Ingrid Lewis and the statutory beneficiaries sustained in the past and that they will, in reasonable probability, sustain in the future;
2.     Loss of companionship and society—the loss of the positive benefits flowing from the love, comfort, companionship, and society that Ingrid Lewis and the statutory beneficiaries would have received from Desmond Lewis had he lived—that Ingrid Lewis and the statutory beneficiaries sustained in the past and that they will, in reasonable probability, sustain in the future;
3.     Pecuniary loss—loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Ingrid Lewis and the statutory beneficiaries would have received from Desmond Lewis had he lived—that Ingrid Lewis and the statutory beneficiaries sustained in the past and that they will, in reasonable probability will sustain in the future.

93.     **Punitive/Exemplary Damages against Defendant Horton.**  Punitive/exemplary damages are recoverable under section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  Here, the conduct of Defendant Horton was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of the Plaintiff.  As such, Plaintiff requests punitive and exemplary damages from Defendant Horton to deter this type of conduct in the future.

94.     Prejudgment and post judgment interest.

95.     Costs of court.

96.     Reasonable and necessary attorney's fees incurred by the Plaintiff through trial, and reasonable and necessary attorney's fees that may be incurred by Plaintiff for any post-trial proceedings, or appeal, interlocutory or otherwise, pursuant to 42 U.S.C. § 1988.

97.      Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VII.     <u>CONDITIONS PRECEDENT</u>

98.     Plaintiff reserves her rights to plead and prove the damages to which she is entitled to at the time of trial.  All conditions to Plaintiff's recovery have been performed or have occurred.

## VIII.   <u>TRIAL BY JURY</u>

99.     Plaintiff has paid a jury fee and demands trial by jury.

## IX.     <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff have and recover judgment from

Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

By: _/s/ Daryl K. Washington_____
DARYL K. WASHINGTON
State Bar No. 24013714
**WASHINGTON LAW FIRM, P.C.**
325 N. St. Paul St., Suite 3950
Dallas, Texas 75201
214 880-4883
214-751-6685 – fax
(**FILING PRO HAC VICE ADMISSION**)

By: _/s/ Kenneth M. Willis_____
KENNETH M. WILLIS
State Bar No. 32015
**WILLIS LAW & JUSTICE, LLC**
13011 Justice Ave.
Baton Rouge, LA 70816
225-388-5569
225-388-5568 – fax
kwillis@thewillislawfirm.com

**ATTORNEYS FOR PLAINTIFF**