## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | | |
|---|---|---|
| **INGRID LEWIS, individually and on behalf of DESMOND LEWIS, deceased** | * | **CASE NO. 5:22-cv-00195** |
| **VERSUS** | * | **DISTRICT JUDGE FOOTE** |
| **DEYONTA HORTON, et al** | * | **MAGISTRATE HORNSBY** |

### MEMORANDUM IN SUPPORT OF
### DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

MAY IT PLEASE THE COURT:

**I.        Claims Asserted by Plaintiff**

On January 21, 2022, Plaintiff Ingrid Lewis filed a Complaint pursuant to 42 U.S.C. § 1983 against Shreveport Police Officer Deyonta Horton, the City of Shreveport, and American Alternative Insurance Corporation seeking to recover damages arising from the alleged wrongful death of her son, Desmond Lewis, after he was killed during an incident involving Officer Horton on September 11, 2021.  *See* Rec. Docs. 1 and 10.  Plaintiff asserts federal claims of excessive use of force and *Monell* claims based on alleged unconstitutional policies, failure to train, supervise, or discipline, and also asserts a wrongful death claim pursuant to Louisiana Civil Code Article 2315.

In her 25-page Complaint, Plaintiff attempts to negatively portray the Shreveport Police Department as a "troubled agency" (Rec. Doc. 10, ¶ 13) by referring to singular, isolated incidents which are wholly irrelevant to this instant case, and by repeatedly setting forth speculative and conclusory allegations of constitutional violations without any factual

1

support.  As discussed hereinbelow, Plaintiff's Complaint lacks sufficient factual detail to support a *Monell* claim and Plaintiff cannot maintain a claim against Officer Horton in his official capacity, and such claims should be dismissed.

## II.      Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint does not need detailed factual allegations, but a plaintiff's obligation to state the grounds for his entitlement to relief requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Importantly, insofar as Defendants assert qualified immunity in response to the claims Plaintiff has made under § 1983, the Court must scrutinize the allegations even more closely.  The doctrine of qualified immunity insulates government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Because qualified

immunity is "an immunity from suit rather than a mere defense to liability,...it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

A heightened pleading requirement is imposed on a civil rights plaintiff suing a state actor in his individual capacity.  To satisfy the heightened pleading requirement, the "complaint must allege with particularity all material facts establishing a plaintiff's right of recovery, including 'detailed facts supporting the contention that a plea of immunity cannot be sustained.'" *Bright v. City of Killeen, Texas,* 2021 WL 1226559, *4 (W.D.Tex. 3/31/21), quoting *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit,* 954 F.2d 1054, 1055 (5th Cir. 1992).  Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," "qualified immunity represents the norm" and the Fifth Circuit has admonished courts to deny a defendant immunity "only in rare circumstances."  *Romera v. City of Grapevine, Texas,* 888 F.3d 170, 176 (5th Cir. 2018) (internal citations omitted).

### III.   Plaintiff's Claims Against Defendant Horton in his Official Capacity Should be Dismissed

The real party in interest in an official capacity suit is the governmental entity, not the named official. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them").  Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114

(1985); *see also, Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent.").  Accordingly, all claims against Officer Horton in his official capacity should be dismissed with prejudice.

### IV.   Plaintiff Failed to State a Plausible *Monell* Claim

Under *Monell,* municipalities can be held liable for the constitutional violations which arise from enforcement of the municipality's policies and procedures, but the municipality cannot be held liable for the constitutional torts of their employees under the doctrine of respondeat superior.  *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.), *reh'g denied*, 251 F.3d 159, *cert. denied*, 122 S.Ct. 53 (2001). Thus, in order to hold a municipality liable under § 1983, a plaintiff must identify: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.  *Monell*, 436 U.S. at 694.  A custom or policy may be found in multiple ways.   Most often, it exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a persistent, widespread practice of officials or employees which, although not authorized by officially adopted and promulgated policy, "is so common and well-settled as to constitute a custom that fairly represents municipal policy."  *Piotrowski,* 237 F.3d at 579.  Regardless of the form, a policy is "official" only "when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy."  *Jett v. Dallas*

*Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

A municipality's failure to train, supervise, or discipline its police officers may also give rise to § 1983 liability, but the plaintiff must show that the failure constituted "deliberate indifference" to his constitutional rights.  *See Sanders-Burns v. City of Plano,* 578 F.3d 279, 290 (5th Cir. 2009); *Brumfield v. Hollins,* 551 F.3d 322, 332 (5th Cir. 2008); *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002); *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000).  A plaintiff "must show that 'in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'"  *Sanders-Burns*, 594 F.3d at 381, quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390,  S.Ct. 1197, 103 L.Ed.2d 412 (1989).  The focus must be on the training program in relation to the tasks the particular officer(s) must perform.  The fact that a particular officer may be unsatisfactorily trained will not suffice, as the officer's shortcomings may have resulted from factors other than a faulty training program.  *City of Canton,* 489 U.S. at 390-91.  It will not suffice to simply "prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."  *Id.* at 391.  "[P]lainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."  *Id.*  Moreover, for liability to attach, a plaintiff must still prove that the deficiency in a city's training program actually caused the injury. *Id.; see also, Schumpert v. City of Tupelo,* 905 F.3d 310, 317 (5th Cir. 2018).

Generally, claims of inadequate training require that the plaintiff demonstrate a pattern of similar violations. *Sanders-Burns*, 594 F.3d at 381; *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5ᵗʰ Cir. 2005) ("a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation'"). The prior acts must be fairly similar to what ultimately transpired and, in a case of excessive force, the prior act must have involved injury to a third party. *Id.*

### A.   City's Written Policies

Plaintiff alleges "[t]he City's written policies on the use of force are facially unconstitutional and were a moving force behind Lewis's constitutional right to be free from excessive force." (Rec. Doc. 10, p.15). Plaintiff only refers to the "written policies" in a conclusory manner and fails to identify a specific policy, or a specific provision of any policy, that is facially unconstitutional.

Further, while Plaintiff alleges SPD's policies on use of force contradict what the United States Supreme Court has set forth as the constitutional limits on lethal force, Plaintiff incorrectly argues that a suspect must pose an "actual" and "immediate threat" to the officer before lethal force is justified. Contrary to Plaintiff's argument, the law does not require that an officer be in actual, imminent danger of death or serious bodily injury in order to use lethal force. The relevant inquiry is only whether the officer reasonably *believed* the suspect posed a threat of serious harm to the officer or others. *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694 (1985) (affirming principle that deadly force is authorized where "the officer has probable cause to *believe* the suspect poses a threat of

physical harm, either to the officer or to others") (italics added); *and see, Harris v. Serpa,* 745 F.3d 767, 773 (5th Cir. 2014).  The Fifth Circuit has repeatedly found that "it is objectively reasonable for an officer to use deadly force even if he merely *believes*—albeit reasonably—that the suspect is reaching for a weapon." *Orr v. Copeland,* 844 F.3d 484, 494 (5th Cir. 2016) (italics in original).  "It is immaterial whether a plaintiff was actually armed." *Valderas v. City of Lubbock,* 937 F.3d 384, 390 (5th Cir. 2019).

Accordingly, because Plaintiff has failed to identify any written policy of the Shreveport Police Department that is facially unconstitutional, and Plaintiff has failed to sufficiently allege that any policy was a "moving force" in Mr. Lewis's death, Plaintiff's *Monell* claim based on the Shreveport Police Department's written policies must be dismissed.

### B.  SPD's Training, Supervision, and Discipline[1]

Plaintiff alleges the City failed to train its officers on use of force and in dealing with individuals during a foot pursuit, and argues in a conclusory manner that policymakers knew or should have known that Officer Horton "exhibited a pattern of escalating encounters with the public." (Rec. Doc. 10, p.17).  Plaintiff repeatedly states, in multiple ways, that SPD's policies, training, supervision, and/or discipline are "inadequate," yet Plaintiff failed to state any factual allegations as to *how* the City's training program is allegedly deficient or how the alleged deficiency caused the death of Mr. Lewis.  Plaintiff's

---

[1] A failure-to-supervise claim is evaluated in the same manner as a failure-to-train claim, so both claims will be addressed simultaneously. *Trammell v. Fruge,* 868 F.3d 332, n.11 (5th Cir. 2017), citing *Burge v. St. Tammany Par.,* 336 F.3d 363, 370 (5th Cir. 2003).

allegations of inadequate training are nothing more than legal conclusions unsupported by factual details. *See Id.,* ¶¶ 83-93; *see also, Ashcroft,* 556 U.S. at 768 ("[t]hreadbare recitals of the elements of a cause of action" and conclusory allegations are insufficient to survive a 12(b)(6) motion). Plaintiff's allegations of alleged inadequate supervision and discipline are even more tenuous as Plaintiff failed to identify even a single incident of misconduct or excessive use of force by Officer Horton. *See* Rec. Doc. 10, ¶¶ 77-78.

Although Plaintiff does include in her Complaint facts concerning a shooting involving Officer Treveion Brooks, and incidents of use of force by other Shreveport police officers, none of the factual allegations concerning other incidents are sufficient to state a plausible claim in this matter. Plaintiff has not set forth any facts to demonstrate any other constitutional *violations*, nor are any of the alleged incidents fairly similar to what ultimately transpired. Specifically, with respect to Plaintiff's allegations concerning Anthony Childs, Plaintiff acknowledges in her Complaint that Officer "Brooks believed Childs to be armed" (Rec. Doc. 10, ¶ 16). The fact that Mr. Childs was shot and killed by an officer who believed Mr. Childs to be armed is woefully insufficient to demonstrate a constitutional violation. Plaintiff also refers to incidents involving Tommie McGlothen, Jr., Chico Bell, and Damon Robinson, but there are no allegations that either of these incidents involved the use of lethal force, nor are there any allegations that demonstrate a situation that was "fairly similar to what ultimately transpired" between Officer Horton and Mr. Lewis. *See infra.*

Plaintiff's Complaint fails to state how the Shreveport Police Department's training program is inadequate, fails to state how the alleged training deficiency caused Mr. Lewis's

8

death, fails to identify a pattern of violations similar to what ultimately transpired between Officer Horton and Mr. Lewis, fails to identify any prior violations by Officer Horton, and fails to state how any official acted with deliberate indifference.  Plaintiffs' repeated allegations of inadequate training, supervision, and discipline are nothing more than legal conclusions unsupported by factual details.  Accordingly, Plaintiff's *Monell* claim based on the Shreveport Police Department's training program must be dismissed.

### V.      Conclusion

For the reasons set forth herein, Defendants show that Plaintiffs' factual allegations fail to satisfy the applicable pleading standards for *Monell* claims and therefore fail to state a plausible claim for relief.

WHEREFORE, Defendants pray that this Motion to Dismiss be GRANTED, and that Plaintiff's claims against Officer Horton in his official capacity and all *Monell* claims against the City of Shreveport be DISMISSED WITH PREJUDICE, at Plaintiff's costs.

Respectfully submitted,

**CARMOUCHE, BOKENFOHR, BUCKLE & DAY**

BY:   */s/ Nichole M. Buckle*
        Nichole M. Buckle, Bar No. 32113
        Amy G. Day, Bar No. 33138
One Bellemead Center
6425 Youree Drive, Suite 380
Shreveport, Louisiana 71105
Phone: (318) 629-0014
Fax: (318) 404-1571

**ATTORNEYS FOR DEFENDANTS, DEYONTA HORTON and the CITY OF SHREVEPORT**