## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

INGRID LEWIS                                      CIVIL ACTION NO. 22-0195

VERSUS                                            JUDGE S. MAURICE HICKS, JR.

DEMETRIUS HORTON, ET AL.                          MAGISTRATE JUDGE MCCLUSKY

### MEMORANDUM RULING

Before the Court is a Motion for Partial Dismissal Pursuant to Rule 12(b)(6) (Record Document 14) filed by Defendants, the City of Shreveport ("the City") and Officer Deyonta Horton ("Officer Horton"). The City and Officer Horton seek partial dismissal of Plaintiff Ingrid Lewis's ("Lewis") First Amended Complaint, arguing she cannot maintain a claim against Officer Horton in his official capacity and has failed to set forth sufficient factual details to state a plausible Monell claim. See id. Lewis filed a response and Defendants replied. See Record Documents 16 & 21. For the reasons set forth below, the Motion for Partial Dismissal is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the official capacity claim against Officer Horton; **GRANTED** as to the Monell claim based on the City's alleged facially unconstitutional use of force policy; and **DENIED** as to the remaining Monell claims against the City.

### FACTUAL AND PROCEDURAL BACKGROUND

Lewis filed the instant suit pursuant to 42 U.S.C. § 1983 against Officer Horton, the City of Shreveport, and American Alternative Insurance Corporation seeking to recover damages arising from the alleged wrongful death of her son, Desmond Lewis.

See Record Document 19 at ¶ 1.  Desmond Lewis was killed during an incident involving Officer Horton on September 11, 2021.  See id. at ¶¶ 9-11.  Lewis describes the incident in her First Amended Complaint:

> On September 11, 2021, Lewis was at his mother's residence when he decided to go to a Circle K store to purchase some items.  According to Mrs. Ingrid, Lewis had in his possession, two cellular phones, and did not have any weapons on his person. In fact, Lewis was not known to own any guns. While at the Circle K store, at no time did Lewis create any disturbance nor did he harass anyone. No one from the Circle K store reported that Lewis was in possession of a gun or that Lewis was threatening to harm anyone.
>
> For some unknown reason, Defendant Horton arrived at the Circle K store shortly before Lewis left. Lewis was not committing any penal offenses when Defendant Horton approached him. Upon information and belief, Defendant Horton harassed Lewis for no lawful reason. Not wanting any trouble, Lewis decided to immediately leave. For some unknown reason, Defendant Horton started to pursue Lewis. According to witnesses, Lewis was running away from Defendant Horton as if he were scared. After a very short pursuit, Defendant Horton tackled Lewis to the ground and was observed placing Lewis's arms behind his back. According to witnesses, Defendant Horton was straddled on top of Lewis who was faced down and unable to get up when Defendant Horton fired multiple shots at Lewis at close range, hitting Lewis in the back of his head and his left forearm. According to witnesses, who indicated they had a clear view of the incident, Lewis was not in possession of handgun nor did he make any gestures that would make it appear that he had a gun, when Defendant Horton shot Lewis execution style in the back of the head.
>
> Defendant Horton's wrongful action resulted in Lewis's painful death after suffering for a period of time without any medical attention from Defendant Horton or any other Shreveport police officers who arrived on the scene.

Id.

Lewis asserts federal claims of excessive force, Monell claims, and a wrongful death state law claim under Louisiana Civil Code Article 2315.  See id. at ¶ 1.  The Monell claims are based on an alleged use of force policy that is facially unconstitutional; alleged failure to properly train, supervise, screen, discipline, transfer,

counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force; and the City policymakers'[1] alleged failure to implement and/or enforce policies, practices, and procedures for the Shreveport Police Department ("SPD") that respected Desmond Lewis's constitutional rights.  See id. at ¶ 2.  Lewis asserts that the City and its policymakers' failure to implement the necessary policies and the implementation of facially unconstitutional policies deprived Desmond Lewis of his rights under the Constitution and caused him unwarranted and excruciating physical and mental anguish and eventually death.  See id.  Lewis further contends that Officer Horton consciously disregarded the rights of Desmond Lewis, knowing that the City's policymakers would ratify and/or approve of his actions.  See id.

In her First Amended Complaint, Lewis references "other officer involved shootings" and "a large number of excessive force cases in a four-year period."  Id. at ¶ 13.  Specifically, she references the following incidents:

> 14.  According to a news report, between 2019 and 2020, five incidents of alleged beatings and tasings by the department—including one that killed a man—resulted in charges for sixteen officers in the SPD. . . .

> 15.  One afternoon in February 2019, Anthony Childs was walking down the street in Shreveport, Louisiana, when he was spotted by Shreveport Police officer Treveion Brooks ("Brooks"). Dashcam video from that day, first obtained by the Shreveport Times, shows Brooks make a U-turn and drive up to Childs, who ran into an open field. It was reported that Brooks was attempting to stop Childs, a 31-year-old Black man, because his shorts were sagging below his waistline, breaking a city ordinance that has since been repealed.

> 16.  In the video, Brooks hops the curb and speeds toward Childs, nearly hitting him.  Brooks got out of his patrol vehicle and took cover behind his car's trunk. It was alleged that Brooks believed Childs to be armed so he

---

[1] Lewis alleges that the City's policymakers were Interim Chief of Police, Wayne Smith ("Smith"), the Shreveport City Council, and Mayor of Shreveport, Adrian Perkins ("Perkins").  See Record Document 10 at ¶ 2.

fired two shots. After a brief pause, three more shots were fired. More than 10 seconds pass, a period during which Brooks calls in the shooting. Then he says, "Hey, show me your hands," and four more shots are fired.

17.  Childs died as a result of the incident.  . . .

. . .

19.  One of the more high-profile examples: the death of 44-year-old Black man Tommie McGlothen Jr. in April 2020. The police were called about McGlothen three times before he died. The first time, McGlothen's family called the Shreveport Police themselves to report another "episode." (In the past, he said, the family had sought help from police officers for McGlothen, who suffered from paranoid schizophrenia and depression.) The second time, McGlothen had gone missing from his home. The final time was after McGlothen allegedly got into an altercation with another man, according to a report in The Shreveport Times.

20.  After police arrived and arrested him, McGlothen was transferred to a local hospital and died early in the morning on April 6, 2020. It was not until cellphone footage was released two months later that it was revealed McGlothen was punched in the head and face, kicked, tased, and struck with a baton by four officers during a struggle on the ground and while getting into a patrol car.  . . .  After reviewing the files, prosecutors said, there were "missing reports, statements, downloads, and other vital information that is essential to conduct a thorough and complete review," and they asked for anyone with video evidence to come forward.

21.  The alleged blackout of information was no one-off thing, Councilwoman LeVette Fuller ("Fuller") said. Fuller pointed to a separate beating of two Black men by police in January 2020 that was only revealed to the public five months later.

22.   In another incident, according to the District Attorney's Office, Shreveport Police officers tried to stop Chico Bell, 40, and Damon Robinson, 44, for seatbelt violations as they left a home in a car. After hitting their light and sirens, Bell and Robinson allegedly continued to drive, and a pursuit began. Eventually, a Caddo Parish Sheriff deputy joined the pursuit. When the car with Bell and Robinson came to a stop, the deputies' dashcam shows Bell and Robinson raised their hands and stuck them out the window, according to prosecutors. But Shreveport Police officers pulled Bell out of the car through the window, and punched, kicked and tased him, according to reports. Medical records show Bell suffered a broken orbital plate. Prosecutors concluded that the same footage caught another Shreveport officer punching Robinson multiple times through the car window while other officers held his hands.

Robinson was taken to the ground and hit in the face with a flashlight while his hands were behind his back, shattering his nose.

23. In July 2020, Fuller, a city council member in Shreveport, submitted a formal request for a patterns or practice investigation to the Department of Justice after the City Council unanimously approved a resolution to do so. . . . The City was clearly aware that were problems within the SPD.

Id. at ¶¶ 14-23.

Again, the defense now moves for partial dismissal of Lewis's First Amended Complaint, specifically the official capacity claim against Officer Horton and the Monell claims against the City. See Record Document 14. Lewis filed a response, wherein she did not contest dismissal of the official capacity claim against Officer Horton. See Record Document 16. Defendants replied. See Record Document 21.

## LAW AND ANALYSIS

As mentioned above, the City and Officer Horton seek partial dismissal of Horton's First Amended Complaint, more specifically the official capacity claim against Officer Horton and the Monell claims against the City. As to the official capacity claim against Officer Horton, Lewis did not deny that the real party in interest in an official capacity suit is the governmental entity (here, the City), not the named official. See Hafer v. Melo, 502 U.S. 21, 25-27, 112 S.Ct. 358, 361-362 (1991).[2] Thus, in the absence of any objection by Lewis, and in accordance with applicable law, the Motion for Partial Dismissal is **GRANTED** as to all claims against Officer Horton in his official

---

[2] The Hafer Court explained that "[s]uits against state officials in their official capacity . . . should be treated as suits against the State." Hafer, 502 U.S. at 25, 112 S.Ct. at 361. The premise behind this rationale is that "the real party in interest in an official-capacity suit is the governmental entity and not the named official." Id., 112 S.Ct. at 362. "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." Id. at 27, 112 S.Ct. at 362.

capacity.  All such claims are **DISMISSED WITH PREJUDICE**.  Thus, the Court must only analyze Lewis's Section 1983 Monell claims against the City.

## I.    Rule 12(b)(6) Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading standard to state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The standard for the adequacy of all complaints under Rule 8(a)(2) is now the "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S.Ct. 1955 (2007). Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S.Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2).  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for "failure to state a claim upon which relief can be granted." Courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially

plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court.'" Twombly, 550 U.S. at 558, 127 S.Ct. at 1966 (citations omitted).

In the context of Section 1983 Monell claims against municipalities, courts have held that relevant policy or widespread practice need not be plead in exhaustive detail. See Maze v. Garber, No. 6:19-CV-00953, 2020 WL 2892174, at *3 (W.D. La. June 1, 2020), citing Thomas v. City of Galveston, Texas, 800 F.Supp.2d 826, 842-846 (S.D. Tex. 2011) (explaining that "only minimal factual allegations should be required at the motion to dismiss stage."). Moreover, Monell claims are not subject a heightened pleading standard. See id., citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993). A plaintiff alleging Section 1983 Monell claims against municipalities must plead sufficient facts "to state a claim for relief that is plausible on its face," that is, enough "to raise a reasonable expectation that discovery will reveal evidence" to support the claim. Id., citing Twombly, 550 U.S. at 570, 127 S.Ct. at 1965. A plaintiff must at least identify the relevant policy, custom or practice that was the motivating force for the alleged constitutional violation and also plead more than generic, boilerplate recitations of the elements of claims against a municipality for an unconstitutional custom or practice, failure to adequately train or supervise, and negligent hiring of officials. See Maze, 2020 WL 2892174, *3. The

factual allegations must provide fair notice of the specific policies or customs that are being challenged. See id.

## II.     Section 1983 Monell Liability

A municipal entity is not liable under Section 1983 on the theory of vicarious liability. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978).   Under Monell, a municipal entity may be liable only if its official policy or custom is the "moving force" behind the plaintiff's alleged constitutional right violation. See Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003) (citations omitted). To succeed on a Monell claim against a local government entity, a plaintiff must establish three elements: (1) an official policy or custom; (2) of which a policy maker can be charged with actual or constructive knowledge; and (3) a constitutional violation whose moving force is that policy or custom. See Valle v. City of Houston, 613 F.3d 536, 541-42 (5th Cir. 2010).   Proving these elements is "necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).   "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." Id.

Section 1983 municipal liability results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy. See id. at 579. Official policy is generally found in "duly promulgated policy statements, ordinances or regulations." Id. Yet, a policy can also be evidenced by custom:  "a persistent, widespread practice of City

officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Id.

A municipality can be liable for failure to train, supervise, or discipline its employees "when the municipality's failure shows a deliberate indifference to the rights of its inhabitants." Sanders-Burns v. City of Plano, 594 F.3d 366, 381 (5th Cir. 2010). Deliberate indifference requires more than mere negligence. See id. A plaintiff must establish that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need." Id. Deliberate indifference is difficult to base on a single incident. See id. "Claims of inadequate training generally require that the plaintiff demonstrate a pattern." Id. Moreover, the previous acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." Id. Monell plaintiffs must also establish both the causal link ("moving force") and the City's degree of culpability ("deliberate indifference" to federally protected rights). Piotrowski, 237 F.3d 567 at 580.

## III.   Analysis

Lewis has asserted two Section 1983 Monell claims:   (1) the SPD's facially unconstitutional use of force policy; and (2) failure to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force. As to her failure to train, supervise, screen, discipline, transfer, counsel or otherwise control claim, Lewis

contends the City policymakers' failed to implement and/or enforce policies, practices, and procedures for the SPD that respected Desmond Lewis's constitutional rights.

The City's Written Policies

Lewis contends that the City's written policies on the use of force are facially unconstitutional and were the moving force behind Desmond Lewis's constitutional right to be free from excessive force.  She refers to the written policies but does not identify a specific policy or provision.  In her response to the Rule 12(b)(6) Motion, Lewis submits that the City's policy ignores Supreme Court law.  See Record Document 16-1 at 15. More specifically, she argues that "a policy is unconstitutional if it authorizes using deadly force in any instance where the threat to officers or others is not *both* serious *and* immediate."  Id. at 16.  Lewis submits that "any City policy that permits using deadly force based on any threat that was not immediate – even if it was serious – is unconstitutional on its face."  Id.  Finally, she maintains that "any City policy that permitted shooting [Desmond] Lewis when he was visibly unarmed – or when it was unreasonable to believe he was unarmed – was, thus unconstitutional on its face."  Id.

Here, the Court does not have to accept Lewis's mere conclusory statement that the SPD's use of force policy is facially unconstitutional.  See Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949-1950. ("We are not bound to accept as true a legal conclusion couched as a factual allegation.").  Lewis has failed to identify the policy or specific language in the policy that is facially unconstitutional.  Moreover, Lewis's argument appears to be based on the incorrect legal premise that a suspect must post an actual serious threat before an officer is authorized to use lethal force.  The correct legal standard is that deadly force is authorized where the officer has probable cause to

believe the suspect poses a threat of physical harm, either to the officer or to others. See <u>Tennessee v. Garner</u>, 471 U.S. 1, 11, 105 S.Ct. 1694 (1985). Lewis's conclusory legal assertions regarding SPD's use of force policy are insufficient to state a plausible claim for relief. The Rule 12(b)(6) Motion is **GRANTED** as to Lewis's Section 1983 <u>Monell</u> claim that the City's written policies on the use of force are facially unconstitutional and were the moving force behind Desmond Lewis's constitutional right to be free from excessive force.

<u>The City's Alleged Failure to Train, Supervise, Screen, Discipline, Transfer, Counsel, and/or Control</u>[3]

Lewis alleges that the City's alleged failure to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force was a moving force behind Desmond Lewis's death. She further contends that the City policymakers' alleged failure to implement and/or enforce policies, practices, and procedures for the SPD that respected Desmond Lewis's constitutional rights, <u>i.e.</u>, the right to be free from excessive force, was also a moving force behind Desmond Lewis's death. The City argues that Lewis's allegations are again conclusory and that she failed to state any factual allegations as to how the City's training program was allegedly deficient or how the alleged deficiency caused the death of Desmond Lewis. The City also submits that Lewis's reference to prior incidents fail to identify a pattern of similar violations.

The Court begins its analysis by noting that a plaintiff alleging Section 1983 <u>Monell</u> claims against municipalities must plead sufficient facts to raise a reasonable

---

[3] It appears that failure to supervise, screen, discipline, etc. claims are evaluated in the same manner as failure to train claims. <u>See</u> <u>Trammell v. Fruge</u>, 868 F.3d 332, 344 (5th Cir. 2017). Thus, all such claims will be addressed simultaneously. <u>See id.</u>

expectation that discovery will reveal evidence to support the claim.  Here, Lewis concedes that a training program exists within the SPD, but points to inadequate training as to the use of deadly force, non-deadly force, proper arrest, confrontation techniques, and de-escalation of force.  See Record Document 10 at ¶¶ 29-30.  She further points to inadequate training, supervision, and/or discipline relating to the use of deadly force during a foot pursuit.  See id. at ¶ 73.  She also alleges factually how such failures proximately caused Desmond Lewis's constitutional injury and death.  See id. at ¶¶ 23, 28, 75.  Lewis has gone beyond the generic, boilerplate recitations of the elements of claims against a municipality for failure to adequately train or supervise. See Maze, 2020 WL 2892174, *3.  She has likewise provided adequate notice to the defense of the basis of her claims by outlining a lengthy list of past misconduct to others.  See Record Document 10 at ¶¶ 14-23.  Here, Lewis's list is more than broadly-defined or vague constitutional violations followed by only bald assertions that there was a pattern of such violations, that there was a failure to train/supervise/discipline, or that the constitutional violations resulted from improper training/supervision/discipline.

The Court finds that Lewis's factual allegations as to her Section 1983 Monell claims for failure to train, supervise, screen, discipline, transfer, counsel, and/or control are sufficient at the Rule 12(b)(6) stage.  While the claims may not ultimately survive a Rule 56 challenge, Lewis has – at a minimum – plead sufficient facts to raise a reasonable expectation that discovery will reveal evidence to support her Monell claims. Therefore, the Rule 12(b)(6) Motion is **DENIED** as to the failure to train, supervise, screen, discipline, transfer, counsel, and/or control claims.

## CONCLUSION

For the foregoing reasons, the Motion for Partial Dismissal is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** as to the official capacity claim against Officer Horton; **GRANTED** as to the <u>Monell</u> claim based on the City's alleged facially unconstitutional use of force policy; and **DENIED** as to the remaining <u>Monell</u> claims against the City.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 29th of March, 2023.


S.MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT